# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSCAR VIVALDO AND GUADALUPE ROJA MORALES, on behalf of themselves and all others similarly-situated,<br><br>        Plaintiffs,<br><br>        -against-<br><br>UNITED TALMUDICAL ACADEMY OF KIRYAS JOEL, INC., and WOLF GLUCK, an individual, and, ARON SPITZER, an individual,<br><br>        Defendants. | ECF Case<br><br>Index No. 1:14-cv-2636 (LAK)(GWG)<br><br>**JOINT CONDITIONAL STIPULATION OF SETTLEMENT AND RELEASE** |

      This Joint Conditional Settlement Agreement and Release ("Settlement Agreement") is entered into by and between Plaintiffs OSCAR VIVALDO AND GUADALUPE ROJA MORALES ("Named Plaintiffs") and Defendants UNITED TALMUDICAL ACADEMY OF KIRYAS JOEL, INC., and WOLF GLUCK, an individual, and ARON SPITZER, an individual ("Defendants") (Named Plaintiffs and Defendants, together, as "the Parties").[1]

## I.    RECITALS AND BACKGROUND

    **A.**    Whereas, on April 14, 2014, a lawsuit titled *Oscar Vivaldo and Guadalupe Roja Morales, on behalf of themselves and all others similarly-situated v. United Talmudical Academy of Kiryas Joel, Inc., and Wolf Gluck, an individual, and Aron Spitzer, an individual*, Case No. 1:14-cv-2636, was filed in the United States District Court for the Southern District of New York.

    **B.**    Whereas, on September 5, 2014, the Court so-ordered the Parties' stipulation to conditional certification, permitting the Named Plaintiffs to send notice to putative members of the collective action.  Over the course of the sixty-day opt-in period, three additional plaintiffs (Ninfa Quiroz, Ivan Seneyko and Jansugh Kharabadze) opted into the action.

    **C.**    Whereas, on October 24, 2014, Named Plaintiffs filed an amended complaint, adding class action claims under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23.

    **D.**    Whereas, Named Plaintiffs assert (1) class claims under the New York Labor Law ("NYLL") and collective claims under the Fair Labor Standards Act ("FLSA"), alleging that Defendants had failed to pay Plaintiffs and a collective/class of current

---

[1] The parties will provide the Court with a fully executed version of the Settlement Agreement once approved.

and former kitchen employees proper overtime wages, (2) class claims under the NYLL and collective claims under the FLSA alleging that Defendants had failed to pay Plaintiffs and a collective/class of current and former kitchen employees proper minimum wage compensation; and (3) class claims under NYLL, alleging that Defendants failed to furnish these kitchen workers with proper wage statements and notices.

**E.**   Whereas, on December 29, 2014, the Court held a settlement conference, at which the Parties failed to resolve the matter.

**F.**   Whereas, the Parties engaged in formal discovery in which the Parties took depositions of the Named Plaintiffs, Defendant Spitzer, and Defendants' Fed. Civ. P. 30(b)(6) witness.

**G.**   Whereas, on June 1, 2015, Named Plaintiffs filed for Fed. R. Civ. P. 23 class certification.

**H.**   Whereas, on August 18, 2015, Magistrate Judge Maas entered a Report and Recommendation to District Judge Kaplan, recommending that the Court should grant the Named Plaintiffs motion for the class certification pursuant to Fed. R. Civ. P. 23.

**I.**   Whereas, on September 17, 2015, District Judge Kaplan granted Named Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23 in all respects.

**J.**   Whereas, on November 18, 2016, the Parties sent out Court approved class opt-out notice, which was sent in four different languages.  The sixty-day opt-out period expired on January 17, 2017.  Only one (1) class member (Judith Shezuri) opted-out.

**K.**   Whereas, through the Southern District of New York's mediation program, two mediation sessions were held on January 19, 2017, and January 25, 2017, and Defendants, through their counsel, and Named Plaintiffs, through their counsel, engaged in a series of arms-length negotiations with the assistance of an experienced mediator, Michael A. Levy, Esq., which culminated in their reaching the conditional agreement reflected herein.

**L.**   It is the desire and intention of the Parties that this Settlement Agreement shall, for the Class Members, as fully described below, fully, finally, and forever completely settle, compromise, release, and discharge any and all past and present wage and hour claims, causes of action, disputes, demands, rights, liabilities, expenses, and damages of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local or other applicable law, which any Class Members has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, even if presently unknown and/or unasserted, that occurred at any time up to and including the date the Court enters the Order Granting Final Approval, including without limitation the following: (i) any and all claims asserted or that could have been asserted in the Litigation; (ii)

any and all claims for unpaid regular, straight time or overtime wages, minimum wages, late payment of wages, vacation, commissions, bonuses, severance pay, or any other wage and hour-related, wage-related, wage payment-related, wage notice-related, wage theft-related or recordkeeping-related claims, damages including, but not limited to, back pay, liquidated damages, penalties, attorneys' fees, costs or other remedies or relief of any kind or nature whatsoever under any federal, state, local, or other applicable law, including, but not limited to, the FLSA, 29 U.S.C. § 201, *et seq.,* and any and all claims under federal, state, or local law and/or regulations regulating hours of work, wages (including minimum wages and overtime wages), the timing and/or payment of wages, retaliation, or recordkeeping of any kind; and (iii) any and all claims under any federal, state, local, or other applicable law for wages, overtime, hours worked, and/or missed or interrupted meal breaks under tort, contract, or quasi-contract theories, including any claims for breach of express contract, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, promissory estoppel, equitable estoppel, fraud, negligent misrepresentation, conversion, and failure to keep accurate records; and (iv) any and all derivative benefit claims (both ERISA and non-ERISA benefits, including 40l(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) or other claims pursuant to or derived from The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.,* to the extent such ERISA claims are premised on an alleged failure to credit any member of the Class's account and/or benefits for all hours worked or all compensation paid or entitled to be paid.

**M.**  Class Counsel has conducted a thorough investigation of the claims that Named Plaintiffs asserted against Defendants in the Litigation and/or that relate to or could have arisen out of the same facts alleged in the Litigation or relating to Named Plaintiffs', Opt-In Plaintiffs' and Class Members' employment, including both asserted and unasserted wage-related claims. Based on their independent investigation and evaluation, Class Counsel believes that the settlement with Defendants for the consideration of and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of Named Plaintiffs and all Participating Claimants, as defined in Section II(X) in light of all known facts and circumstances, including the risk of delay, defenses asserted by Defendants, and numerous potential certification and appellate issues.

**N.**  The Releasees expressly deny any liability or wrongdoing of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in the Litigation. The Releasees contend they have complied with federal and state laws at all times.  By entering into the Settlement Agreement, the Releasees do not admit any liability or wrongdoing and expressly deny the same. It is expressly understood and agreed by the Parties that the Settlement Agreement is being entered into by Releasees solely for the purpose of avoiding the cost and disruption of litigation and resolving the claims asserted in the Litigation on the terms set forth herein. Nothing in the Settlement Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Settlement Agreement, may be construed or deemed as an admission by the

Defendants of any liability, culpability, negligence, or wrongdoing, and the Settlement Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Settlement Agreement.   Furthermore, neither the Settlement Agreement, any motions filed, settlement offers and/or proposals, and information and/or documents exchanged by the Parties, or Orders entered pursuant to the Settlement Agreement, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification has been satisfied in the Litigation or any other action, except for the limited settlement purposes pursuant to the terms of the Settlement Agreement.

**O.**   This Settlement Agreement shall automatically terminate if this Settlement Agreement is terminated pursuant to Section XIII, entitled "Termination of Settlement Agreement," in which event this Settlement Agreement shall not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class is certifiable, or any other matter.

**P.**   The Parties agree to cooperate and take all steps necessary and appropriate to obtain the Court's approval of the terms of the Settlement Agreement, to effectuate all aspects of the Settlement Agreement, and to dismiss the Litigation with prejudice upon the Court's approval of the terms of the Settlement Agreement and by operation of the Settlement Agreement.

**Q.**   The Parties shall request that the Court approve, administer, and implement the Settlement Agreement with respect to all actions and claims settled in this Settlement Agreement.

**R.**   This Settlement Agreement is contingent upon the approval of the Court and the satisfaction of the other terms set forth in this Settlement Agreement.  Defendants do not waive, and instead expressly reserves, their right to challenge the propriety of collective and/or class certification by way of a motion for decertification, should the Court not approve this Settlement Agreement and/or enter an Order Granting Final Approval and/or an appellate court reverses the Order Granting Final Approval or judgment, or the settlement as agreed does not become final for any other reason.

**II.**   **<u>DEFINITIONS/CALCULATION OF DATES:</u>** The defined terms set forth in this Agreement have the meanings ascribed to them below.

**A.**   **Agreement.**   "Agreement" means this Joint Stipulation of Settlement and Release and all exhibits, also sometimes referred to as "Stipulation."

**B.**   **Claim Form.**   "Claim Form" means the form approved by the Court that a Class Member must submit in order to be eligible to become a Participating Claimant.

C. **Claim Form Deadline.** "Claim Form Deadline" means the date sixty (60) days after the Notice and Claim Form is initially mailed to the Class Members.

D. **Claims Administrator.** The "Settlement Claims Administrator" shall be an entity experienced in the administration of class action settlements, which shall be selected by Defendants' Counsel and approved by Class Counsel.

E. **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Borrelli & Associates, P.L.L.C., 1010 Northern Boulevard, Suite 328, Great Neck, New York 11021.

F. **Class Counsel's Fees and Costs**. "Class Counsel's Fees and Costs" means the total amount of Class Counsel's attorneys' fees, costs, and expenses to be approved by the Court upon application by Class Counsel, in an amount not to exceed $250,000.00 plus costs. Any reference to Plaintiffs' "attorney's fees" in this agreement means Class Counsel's Fees. This amount is included in the Gross Settlement Amount.

G. **Class Members.** "Class Members" mean all current and former non-managerial kitchen workers of Defendants ("Covered Employment") who during the Class Period performed work on behalf of Defendant United Talmudical Academy of Kiryas Joel, Inc., prior to the implementation of a time clock/the FingerTec System.

H. **Class Period.** The Class Period shall be April 14, 2008 through the date of the Preliminary Approval Order.

I. **Court.** "Court" means the United States District Court, Southern District of New York.

J. **Days.** "Days" means calendar days.

K. **Defendants.** "Defendants" means United Talmudical Academy of Kiryas Joel, Inc., Wolf Gluck, and Aron Spitzer.

L. **Defendants' Counsel.** "Defendants' Counsel" means Gerald C. Waters, Jr. and Jonathan D. Farrell, of the law firm of Meltzer, Lippe, Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501.

M. **Effective Date.** The "Effective Date" means, if no appeal is filed, the date on which this Agreement becomes effective, which shall be thirty (30) days following the date of the Final Approval Order entered by the Court. If an appeal is taken, then the Effective Date shall be the day after the date of final dismissal of any appeal from the Final Approval Order.

N. **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes an employer is required to make on its behalf arising out of or based upon the payment of wages, including FICA, FUTA, and SUTA obligations. All Employer Payroll Taxes will not be paid out of the Gross Settlement Amount.

**O.** **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Judgment and Final Approval referenced in Section XI, below.

**P.** **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, dismissing the Lawsuit with prejudice, and entering Judgment pursuant to this Stipulation.

**Q.** **Gross Settlement Amount.** "Gross Settlement Amount" means a sum not to exceed One Million Dollars ($1,000,000.00), including all unpaid wages, minimum wage, overtime, liquidated or punitive damages, interest, penalties, statutory damages, taxes (not including employer side taxes), Service Payment/Award, Claims Administration Fees and Class Counsel's Fees and Costs, which Defendants have agreed to pay to settle the Lawsuit as set forth in this Agreement, subject, *inter alia*, to Defendants' right to terminate this Agreement as set forth herein.

**R.** **Last Known Address.** "Last Known Address" means the most recently recorded physical mailing address for a Class Member as such information is contained in Defendants' files.

**S.** **Named Plaintiffs.** "Named Plaintiffs" shall mean Oscar Vivaldo and Guadalupe Roja Morales.

**T.** **Net Settlement Amount.** The Net Settlement Amount shall be the portion of the Gross Settlement Amount available for distribution to Class Members who submit a valid and timely claim, after deductions for attorneys' fees, and Service Payment/Awards. Class Counsel's Costs and the Claims Administrator's costs shall be taken from the portion of any unclaimed funds, and therefore shall not factor into the Net Settlement Amount.

**U.** **Notice.** "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

**V.** **Notice Packet.** A Notice Packet will contain (1) the Court approved notice; (2) a Claim Form; and, (3) any additional information agreed upon by the parties.

**W.** **Objector.** "Objector" means an individual who timely and correctly files an objection to this Agreement, and does not include any individual who opts out of this Agreement or previously opted-out of this matter pursuant to prior notice.

**X.** **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means the three additional plaintiffs who opted into the action during the sixty-day opt-in period, Ninfa Quiroz, Ivan Senyko, and Jansugh Kharabadze.

**Y.** **Participating Claimant.** "Participating Claimant" means each Class Member who timely submits a Claim Form and Release by the Claim Form Deadline.

**Z.** **Parties.** "Parties" shall mean Named Plaintiffs individually and on behalf of the Opt-In Plaintiffs and Class Members; and Defendants.

**AA.** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court, preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notice to the Class Members.

**BB.** **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for payments under this Agreement.  The QSF shall consist of settlement awards to Participating Claimants, as calculated pursuant to Section VI(B), approved attorneys' fees and costs to Class Counsel, Service Awards to Named Plaintiffs, and claims administration fees and costs.  The QSF shall be controlled by the Settlement Claims Administrator, subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF shall be returned to Defendants.

**CC.** **Released Claims.** "Released Claims" refers to the released claims set forth in Section XII.

**DD.** **Releasees.** "Releasees" (also referred to as "Released Persons") means the Defendants, United Talmudical Academy of Kiryas Joel, Inc., Wolf Gluck and Aron Spitzer and their respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

**EE.** **Service Payment/Award.** "Service Payment(s)/Award(s)" means the amount(s) to be approved by the Court for payment to Named Plaintiffs Oscar Vivaldo and Guadalupe Roja Morales, in recognition of their efforts on behalf of the Opt-in Plaintiffs and Class Members, in an amount not to exceed Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) each, totaling service awards of $15,000.00.  Any Service Payment/Award made will be subject to taxes and withholdings consistent with IRS Private Letter Ruling No. 201311022 (March 15, 2013).  Named Plaintiffs must timely return a valid Claim Form by the Claim Form Deadline in order to receive any Court-approved Service Payment.

**FF.** **Settlement Checks.**  "Settlement Checks" means checks issued to Participating Claimants for their share of the Net Settlement Amount or Service Payment, based on the formula set forth in Section VI(B).

**GG.** **Settlement Class.** The term "Settlement Class" means all Class Members pursuant to and as referenced in this Agreement.

**HH.** **Settlement Payment.**  "Settlement Payment" means the gross amount of monies paid to a Class Member pursuant to this agreement; and does not include a Service Payment/Award.

**II.** **Updated Address.**  "Updated Address" means a mailing address that was updated via a standard skip trace or an updated mailing address provided by the United States Postal Service or a Class Member.

**JJ.** **Calculation of Dates:** Any deadline, date or time noted herein, to the extent necessary, will be construed and determined pursuant to the Federal Rules of Civil Procedure.

## III.   CONSENT TO COURT-FACILITATED NOTICE FOR SETTLEMENT PURPOSES ONLY

**A.** The Parties agree that the Notice shall be mailed only to those individuals who worked for Defendant United Talmudical Academy of Kiryas Joel, Inc. as a kitchen worker during the Class Period.

**B.** The Parties agree that the Notice shall include the language of the release.

**C.** In a continued effort to notify as many Class Members of the proposed settlement as possible, the Parties agree that the Notice shall be printed and included with, or affixed to, all current United Talmudical Academy of Kiryas Joel, Inc. non-managerial kitchen workers' pay checks on one (1) occasion at or about the time the Claims Administrator initially mails the Notice Packet as detailed herein. The Notice shall be printed in English, Spanish, Russian and Ukrainian.

**D.** The Parties shall cooperate and present to the Court for its consideration in connection with the approval of the Settlement Agreement and Court-facilitated notice such information as may be reasonably requested by the Court for approving FLSA settlements and/or facilitated notice.

## IV.   SETTLEMENT APPROVAL PROCEDURE.  Class Counsel shall file the Preliminary Approval Motion and proposed Preliminary Approval Order by August 14, 2017.

## V.   TERMS OF THE GROSS SETTLEMENT AMOUNT

**A.** The Gross Settlement Amount shall be funded in accordance with Section VI(M).

**B.** A Participating Claimant's Settlement Payment will be the amount calculated as his or her Settlement Payment by the Claims Administrator and pursuant to the terms of this Agreement.

**C.** Settlement Payments, Class Counsel's Fees, and Service Payments/Awards will initially be deducted from the Gross Settlement Amount. Thereafter, and from any remaining Gross Settlement Amount, Class Counsel's Costs and the Claim Administration expenses shall be deducted. Any remainder will then be returned to the Defendants in full.

**D.** In no event shall the total distribution and payments made by Defendants, including, but not limited to, Settlement Payments, Class Counsel's Fees and Costs, Service Payment/Award, and any and all taxes, with the exception of the employer's side payroll taxes, exceed the Gross Settlement Amount.

**E.** Defendants may not be called upon or required to contribute additional monies above the Gross Settlement Amount under any circumstances whatsoever, again with the exception of the employer-side payroll taxes.

**F.** Any interest earned on the portion of the Gross Settlement Amount during the period of settlement administration under this Settlement Agreement, shall remain in an interest-bearing account, which will be returned to Defendants pursuant to Section VI(M)(d).

## VI.   CALCULATION OF SETTLEMENT PAYMENT AND NOTICE PROCEDURE

**A.** Within fourteen (14) days of the Parties' receipt of the Court's Preliminary Approval Order, Defendants shall provide the Claims Administrator with an Excel chart listing the following information for each member of the Settlement Class: name, employee identification number, last known address, Social Security Numbers, dates of employment, and number of actual weeks worked, prior to the implementation of a time clock/the FingerTec System with respect to that particular Class Member, as that information exists on file with Defendants.

**B.** Within ten (10) days following its receipt of the list of members of the Settlement Class, the Claims Administrator shall calculate the Settlement Payments for each member of the Settlement Class (and mail same to Class Counsel and Defendants' counsel as per Paragraph XIV) pursuant to the following formula (and subject to the terms listed in Paragraph VI(A):

1. Calculate the Net Settlement Amount by deducting from the Gross Settlement Amount the Class Counsel's Attorneys' fees and Service Payments/Awards.

2. Each member of the Settlement Class shall be assigned one (1) point for each actual week worked as a non-managerial kitchen worker during the Class Period and prior to implementation of a time clock/the FingerTec System, with

respect to that particular Class Member.  Calculate the number of points for each member.

3.  Add all points for each member of the Settlement Class together to obtain the "Total Denominator."

4.  Divide the number of points for each member of the Settlement Class by the Total Denominator to obtain each member of the Settlement Class's allocated percentage of the Net Settlement Amount.

5.  Multiply each member of the Settlement Class's percentage against the Net Settlement Amount to determine the Settlement Class's Settlement Payment.

The total of all Settlement Payments of the Settlement Class shall not exceed the Net Settlement Amount.

C.  Within seven (7) days after the Claims Administrator has calculated the Settlement Payment amounts for each member of the Settlement Class, the Claims Administrator shall mail, in one mailing, a Notice Packet to each member of the Settlement Class. The Claims Administrator will also mail Named Plaintiffs' Notice Packet.  Prior to the mailing of the Notice Packet to the members of the Settlement Class, the Claims Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and shall mail the Notice Packet to any updated address obtained therefrom. All mailings by the Claims Administrator shall be by first class mail.

D.  If any Notice Packet is returned as undeliverable for a member of the Settlement Class, the Claims Administrator will perform one skip trace and resend by first class mail the Court-authorized Notice Packet once only to those members of the Settlement Class for whom it obtains more recent addresses. If the results of the skip trace do not yield a new address no additional notice will be sent. The Claim Form of any member of the Settlement Class who was resent a Court-authorized Notice Packet as a result of the skip trace process will be considered timely only if it is received by the Claims Administrator within fourteen (14) days after the Claim Form Deadline.

E.  Thirty (30) days after the initial mailing of the Notice Packet, the Claims Administrator shall mail via First Class United States mail, postage prepaid, a postcard reminder to each member of the Settlement Class who has not yet submitted a completed Claim Form. The reminder postcard will be a standard-sized (approximately 4 inches by 5 inches) white cardstock postcard and will contain black font with the font size being no greater than 12 point. The reminder postcard will identify the caption of the Litigation, will provide contact information for the Claims Administrator, and will state, "If you plan to submit a Claim Form, you must mail it so that it is postmarked or received by the Claims Administrator by [Claim Form Deadline]." The reminder postcard will be mailed via first-class mail to the most

10

recent address the Claims Administrator has on file for the members of the Settlement Class. No additional reminder postcards will be resent.

**F.**   The Claims Administrator shall mail a Notice Packet to any member of the Settlement Class who contacts the Claims Administrator during the time period between the initial mailing of the Notice Packet and the Claim Form Deadline and requests that a Notice Packet be re-mailed.

**G.**   In the event any member of the Settlement Class submits a Claim Form in a timely manner (i.e., post-marked or received by the Claims Administrator on or before the Claim Form Deadline), but the document is incomplete or otherwise deficient in one or more aspects, the Claims Administrator (no later than seven (7) days following the Claim Form Deadline) shall provide the member of the Settlement Class with a letter requesting the information that was not provided and giving the member of the Settlement Class fourteen (14) days from the date the deficiency letter is mailed to the member of the Settlement Class to correct the deficiencies and resubmit the document. The envelope containing the corrected and resubmitted document must be received or postmarked within fourteen (14) days of the date the deficiency letter is mailed to the individual to be considered timely. The Claims Administrator will submit for approval to Class Counsel and counsel for Defendants a proposed deficiency letter for review, comment and approval prior to sending any such letter.

**H.**   In the event of any dispute over a Class Member's dates of employment and/or the late submission of any Claim Forms, the Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Parties are unable to reach an agreement, the Claims Administrator shall decide the dispute, and its decision will be final; however, to the extent a claim is submitted late for which there is a good faith explanation (not simply an excuse that, for example, the Class Member forgot to return the Claim Form in a timely manner) to support the untimely submission, it will be presumed that the Claims Administrator will accept same.

**I.**   In order to be a Participating Claimant, members of Settlement Class must properly complete and timely return a Claim Form so that it is received by the Claims Administrator on or before the Claim Form Deadline.

**J.**   The Claims Administrator shall provide to Defendants' counsel and Class Counsel electronic copies of all timely received and completed Claim Forms on a weekly basis between the initial mailing of Notice Packets and the Claim Form Deadline, and shall also provide a list of Participating Claimants to Defendants' counsel and Class Counsel within five (5) days after the Claim Form Deadline.

**K.**   Within thirty (30) days following the Claim Form Deadline, the Claims Administrator shall determine the total amount of the Settlement Payments claimed by the Participating Claimants, and, after the Claims Administrator performs any re-calculations (using the formula discussed in Section VI(B)), if there is a change in the list of members of the Settlement Class or other relevant information, the

Participating Claimants' Settlement Payments shall be deemed the Settlement Payments amounts. The total of all Settlement Payments shall not exceed the Net Settlement Amount.

**L.**     Within thirty (30) days following the Claim Form Deadline, the Claims Administrator shall certify jointly to Class Counsel and Defendants' counsel: (1) a list of all Participating Claimants; and (2) the total Settlement Payment due to each Participating Claimant, together with the Claims Administrator's calculations of such payments.  Within forty-five (45) days following the Claim Form Deadline, Class Counsel shall file the Claim Forms.

**M.**     (a) Within thirty (30) days of the Preliminary Approval Order Defendants will fund an initial payment of Three Hundred Thousand Dollars and Zero Cents ($300,000.00) into the Qualified Settlement Fund.

(b) Within one hundred (100) days after the Preliminary Approval Order, Defendants will fund a second payment in the amount of Three Hundred and Fifty Thousand Dollars and Zero Cents ($350,000.00) into the Qualified Settlement Fund, if necessary, in order to pay the Settlement Payments to Participating Claimants and Class Counsel's fees if not previously paid.  If less than Three Hundred Fifty Thousand Dollars and Zero Cents ($350,000.00) is required to fund the QSF, the amount deposited will only be the amount required to satisfy any payments required pursuant to the provisions of this Agreement.

(c) Within two hundred (200) days after the Preliminary Approval Order, or ten days after the Order finally approving this settlement, Defendants will fund a third and final payment in the amount of Three Hundred and Fifty Thousand Dollars and Zero Cents ($350,000.00) into the Qualified Settlement Fund, if necessary, in order to pay the Settlement Payments to Participating Claimants and Class Counsel's fees if not previously paid.  If less than Three Hundred Fifty Thousand Dollars and Zero Cents ($350,000.00) is required to fund the QSF, the amount deposited will only be the amount required to satisfy any payments required pursuant to the provisions of this Agreement.

(d)  Following distribution to Participating Claimants and to Class Counsel for fees, any monies remaining in the Qualified Settlement Fund shall be used to pay: (1) the Claims Administrator's fees and costs; and (2) Class Counsel's Costs.  Any monies remaining after these deductions shall be returned to Defendants no later than fourteen (14) days following expiration of the two hundred day period for Participating Claimants to cash their checks referenced in Section VI(P).

**N.**     Within ten (10) days after the Effective Date, the Claims Administrator shall mail each Participating Claimant his/her Settlement Payment, including any Service Payment/Awards. The Claims Administrator shall mail the Settlement Payment to the most recent address that the Claims Administrator has on file for each Participating Claimant, with each Participating Claimant to be paid in the order that

the Claims Administrator received each Participating Claimant's Claim Form. In the event that the QSF is adequately funded following distribution to all Participating Claimants, the Claims Administrator shall distribute Class Counsel's fees at this time. In the event that the QSF is not adequately funded to distribute Class Counsel's fees within ten days after the Effective Date, the Claims Administrator shall distribute Class Counsel's fees immediately following the date that the QSF becomes adequately funded by the deposit referenced in Paragraph VI(M)(b), or if necessary, the deposit referenced in Paragraph VI(M)(c).

O. The Parties agree that each Settlement Payment to be issued to each Participating Claimant shall be separated into two equal amounts: fifty percent (50%) shall be allocated to the claims asserted in the Litigation for unpaid overtime and shall be treated as back wages and subject to all required employee-paid employment and payroll taxes and deductions (e.g., federal, state and local income tax withholding and the employee's share of FICA taxes, and other state-specific statutory deductions) and other required deductions (e.g., garnishments, tax liens, child support); and fifty percent (50%) shall be allocated to the claims asserted in the Litigation for, and shall be treated as, liquidated damages and interest and shall be characterized as non-wage income to the recipient. The Claims Administrator will report the wage portion to each individual entitled to receive a Settlement Payment on an IRS Form W-2 and the non-wage portion on an IRS Form 1099. The Claims Administrator shall be responsible for issuing settlement checks to each Participating Claimant, less required withholdings and deductions (not including Employer Payroll Taxes), and mailing the settlement checks, W-2s and 1099s to each Participating Claimant.

P. Each Participating Claimant will have two hundred (200) days from the date on which the Settlement Payments are postmarked to negotiate his or her settlement check(s). If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the check. Any individual Settlement Payment or portion thereof that remains unclaimed for any reason two hundred (200) days following the mailing of the Settlement Payment(s) shall be deemed unclaimed. In such event, those Participating Claimants will be deemed to have irrevocably waived any right in or claim to a Settlement Payment, but the Settlement Agreement and release of claims contained therein nevertheless will be binding upon them. One hundred percent (100%) of such unclaimed funds (and any other funds which then remain in the QSF after all payments as required by the Agreement are made) shall be returned to Defendants within fourteen (14) days after such funds are deemed unclaimed.

Q. Neither Defendants, counsel for Defendants, Class Counsel, nor Named Plaintiffs shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event a Participating Claimant notifies Class Counsel or the Claims Administrator that he or she believes that a settlement check has been lost or stolen, the Claims Administrator shall stop payment on such check. Such

13

notice regarding a lost or stolen settlement check must be provided as soon as practicable and no later than seven (7) days from discovery/knowledge of same. If the settlement check in question has not been negotiated prior to the stop payment order, the Claims Administrator will issue a replacement check. If the settlement check in question has been negotiated prior to the stop payment order, no additional payment shall be made unless such stop payment order is effective. The Participating Claimant will have an additional thirty (30) calendar days from the date of re-mailing to negotiate the replacement check. If any replacement check is not negotiated in that period of time, that check will be voided.

**R.** All Settlement Payments made pursuant to this Settlement Agreement shall be deemed to be paid to such Participating Claimants solely in the year in which such payments actually are received by the Participating Claimants. It is expressly understood and agreed that the receipt of Settlement Payments will not entitle any Participating Claimant to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place during the periods of employment defined in the "Class Period" with Defendants, nor will it entitle any Participating Claimant to any increased retirement, 403(b) plan or 401(k) plan benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement Agreement that the Settlement Payments provided for in the Settlement Agreement are the sole payments to be made by Defendants to Participating Claimants, and that the Participating Claimants are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the periods of employment defined "Class Period").

**S.** At the conclusion of the settlement administration process, the Claims Administrator shall maintain an electronic copy of all Claim Forms received from members of the Settlement Class and shall provide the original Claim Forms to counsel for Defendants.

## VII.   CLASS COUNSEL'S FEES AND COSTS

**A.** Class Counsel may make an application to the Court for an award of Class Counsel's Fees and Costs in the amount of $250,000.00 plus costs. Defendants will not oppose the application.

**B.** If the Court rules that any amount requested by Class Counsel for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be Class Counsel's Fees and Costs for purposes of this Settlement Agreement. Any remaining amount(s) shall be returned to Defendants.

**C.** The Settlement Agreement is not conditioned on the award of attorneys' fees, and the Parties' request for approval of the Settlement Agreement is to be considered separately from any application for Class Counsel's Fees and Costs.

**D.**     Payment of such Class Counsel's Fees and Costs to Class Counsel as set forth in this Settlement Agreement shall constitute full satisfaction of any and all obligations by Releasees to pay any person, attorney, or law firm (including, but not limited to, Class Counsel) for attorneys' fees, expenses, or costs (including, but not limited to, any fees, costs, and expenses related to any testifying and non-testifying experts and consultants) incurred on behalf the Settlement Class and shall relieve the Defendants of any other claims or liability to any person for any attorneys' fees, expenses, and costs (including, but not limited to, any fees, costs, and expenses related to any testifying and non-testifying experts and consultants) to which any person may claim to be entitled on behalf of each member of the Settlement Class. Upon payment of Class Counsel's Fees and Costs hereunder, Class Counsel and the Settlement Class shall release Releasees from any and all claims for attorneys' fees, expenses, and costs (including, but not limited to, any fees, costs, and expenses related to any testifying and non-testifying experts and consultants) relating to this Litigation. Class Counsel further represent and certify that they are not aware of any liens for attorneys' fees, expenses, or costs existing, filed, or asserted with respect to any of the claims asserted in this Litigation.

**E.**     Class Counsel shall be paid Class Counsel's Fees and Costs via check by the Claims Administrator as directed by Class Counsel. Class Counsel shall provide the Claims Administrator with any information required to effectuate such payments. The Claims Administrator will issue IRS Form 1099s to Class Counsel to reflect Defendants' payment of the Class Counsel's Fees and Costs.

**F.**     Payment of Class Counsel's Litigation Costs are to be paid from the Gross Settlement Amount, but will not factor into the Net Settlement Amount, and will instead by deducted from the unclaimed funds pursuant to Section VI(M)(d).

## VIII.    <u>SERVICE PAYMENT</u>

**A.**     Class Counsel may also make an application to the Court for one-time Service Payment awards to Named Plaintiffs in an amount not to exceed Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) each (totaling Fifteen Thousand Dollars and Zero Cents ($15,000.00)), as payment for each Named Plaintiffs' involvement in commencing and discovering the claims asserted in the Litigation and their involvement in preparing for mediation for the benefit of all Class Members.  The final amount of both Service Payments/Awards (not to exceed $15,000.00) shall be determined by the Court.  Any Service Payment/Award made will be subject to taxes and withholdings consistent with IRS Private Letter Ruling No. 201311022 (March 15, 2013). Defendants will not oppose the application.

**B.**     The Claims Administrator will make the Service Payments (in the amount approved by the Court) to Named Plaintiffs at the same time as any Settlement Payment to them.

C.   The Settlement Agreement is not conditioned on the award of a Service Payment. If the Court rejects the application for a Service Payment, or awards a lesser amount than $15,000.00, any amount that is not approved shall be retained by Defendants.

## IX.   CLAIMS ADMINISTRATION

A.   On or before ten (10) days after the execution of this Settlement Agreement, the Parties shall jointly agree upon a firm to serve as Claims Administrator. In the event the Parties cannot agree upon such a firm, their dispute shall be decided finally by Michael A. Levy, Esq., serving as an Arbitrator on this issue.

B.   The Claims Administration expenses are to be paid from the Gross Settlement Amount, but will not factor into the Net Settlement Amount, and will instead by deducted from the unclaimed funds.

C.   The Claims Administrator will perform all of the administrative duties assigned herein, including, but not limited to: (1) calculating the Gross Settlement Amount; (2) calculating Settlement Payments; (3) formatting and printing the Notice Of Settlement, Claim Form, mailing the Notice Packet to members of the Settlement Class and to Named Plaintiffs, and printing and mailing reminder postcards to members of the Settlement Class; (4) notifying counsel for all Parties of timely and untimely submissions of Claim Forms by members of the Settlement Class; (5) notifying counsel for all Parties of, and resolving any disputes regarding, claims by any member of the Settlement Class; (6) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; (7) preparing, monitoring, and maintaining a toll-free number accessible to members of the Settlement Class (the toll-free number is to remain in operation for ninety (90) days after the Claims Administrator mails the Settlement Payments); (8) receiving and reviewing the Claim Forms submitted by members of the Settlement Class to determine eligibility to receive a Settlement Payment and, with respect to Named Plaintiffs, to  determine eligibility to receive Service Payment; (9) maintaining the original mailing envelope in which Claim Forms are received; (10) preparing all checks and mailing Settlement Payments to Participating Claimants and any Service Payment (if applicable) to Named Plaintiffs and Class Counsel's Fees and Costs to Class Counsel; (11) transferring monies in accordance with the Settlement Agreement; (12) prior to the mailing of the Notice Packet to the members of the Settlement Class, confirming the accuracy of the addresses through the United States Post Office's National Change of Address database and ascertaining current address and addressee information for each Notice Packet returned as undeliverable and conducting a second mailing to the current address, if ascertained; (13) responding to inquiries of members of the Settlement Class regarding the terms of settlement and procedures for submitting Claim Forms; (14) referring to counsel for the Parties all inquiries by members of the Settlement Class regarding matters not within the Claims Administrator's duties specified herein; (15) promptly apprising counsel for the Parties of the activities of the Claims Administrator and the state of its administration settlement; (16)

maintaining adequate records of its activities, including the dates of the mailing of Notice Packet and reminder postcards and receipt of Claim Forms, and mailing of Settlement Payments and any Service Payment, returned mail and other communications and attempted written or electronic communications with members of the Settlement Class; (17) preparing a declaration regarding its due diligence in completing the administration of the Settlement Agreement and claims administration process; (18) timely responding to communications from the Parties or their counsel; (19) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law and pursuant to the terms of this Agreement only after prior consultation with Class Counsel and counsel for the Defendants; (20) calculating each Participating Claimant's share of taxes on the Settlement Payment and remitting all such tax payments (i.e., each Participating Claimant's withheld share of taxes) to the appropriate taxing authorities; (21) performing all tax reporting duties required by federal, state, or local law; (22) indemnifying the Parties for any penalty or interest arising out of any error or incorrect calculation with respect to calculating and reporting taxes and any late deposit of the same; (23) setting up a Qualified Settlement Fund, to be called the "United Talmudical Academy Settlement Fund", to which Defendants shall fund in accordance with Section VII; (24) opening and administering the Qualified Settlement Fund in such a manner as to qualify and maintain it as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. Section 1.468B-l; (25) distributing Defendants' payment of Class Counsel's Fees and Costs, Settlement Expenses, any Service Payment, and Settlement Payments To Participating Claimants; (26) distributing all reverted monies to Defendants as noted herein; (27) such other tasks contained in the Settlement Agreement; and (28) such other tasks as the Parties may mutually agree.

## X.      OBJECTIONS TO SETTLEMENT

A.   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be sent to the Claims Administrator via First-Class mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Settlement.   The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery not later than three (3) days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three (3) days after the end of the Claim Form Deadline.

B.   An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  Any Objector wishing to appear through counsel shall have his/her counsel file a notice of appearance on behalf of that Objector at least fourteen (14) days prior to the Fairness Hearing.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An Objector may withdraw

his/her objections at any time.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with these procedures.

**C.**   The Parties may file with the Court written responses to any filed objections not later than thirty (30) days before The Fairness Hearing.

## XI.   MOTION FOR JUDGMENT AND FINAL APPROVAL

**A.**   Not later than 15 calendar days before the Fairness Hearing, Class Counsel will submit a Motion For Judgment And Final Approval.  The Fairness Hearing shall be held at the Court's convenience.

**B.**   At the Fairness Hearing, the Named Plaintiffs and Defendants, through their counsel of record, shall address timely written objections, as well as any timely stated concerns of any federal or state official who receives a notice under the Class Action Fairness Act ("CAFA"), if any, and any concerns of the Court, if any.

**C.**   At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter Judgment in accordance with this Settlement Agreement, (b) approve the Settlement Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out, (c) dismiss the Litigation with prejudice, and (d) enter an order permanently enjoining all Class Members from pursuing and/or seeking to reopen claims that have been released by this Settlement Agreement.

## XII.   RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

**A.**   "RELEASED CLAIMS" shall mean the following: Effective as of the date of the Final Approval Order, each Class Member who submits a timely Claim Form shall be deemed to fully, finally, and forever completely settle, compromise, release, and discharge Released Persons from any and all past and present wage and hour claims, causes of action, disputes, demands, rights, liabilities, expenses, and damages of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local or other applicable law, which any Releasing Persons have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, even if presently unknown and/or  unasserted, that occurred at any time up to and including the date the Court enters a Final Approval Order, including without limitation the following: (1) any and all claims asserted or alleged or that could have been asserted or alleged in the Litigation; (2) any and all claims for unpaid regular, straight time or overtime wages, minimum wages, late payment of wages, vacation, commissions, bonuses, severance pay, or any other wage and hour-related, wage-related, wage payment-related, wage notice-related,  wage theft-related or recordkeeping-related claims, damages including, but not limited to, back pay, liquidated damages, penalties, attorneys' fees, costs or other remedies or relief of any kind or nature whatsoever under any federal, state, local, or other applicable law, including, but not limited to, the FLSA,

29 U.S.C. § 201, et seq., and any and all claims under federal, state, or local law and/or regulations regulating hours of work, wages (including minimum wages and overtime wages), the timing and/or payment of wages, or recordkeeping of any kind; and (3) any and all claims under any federal, state, local, or other applicable law for wages, overtime, hours worked, and/or missed or interrupted meal breaks under tort, contract, or quasi-contract theories, including any claims for breach of express contract, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, promissory estoppel, equitable estoppel, fraud, negligent misrepresentation, conversion, and failure to keep accurate records; and (4) any and all derivative benefit claims (both ERISA and non-ERISA benefits, including 401 (k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) or other claims pursuant to or derived from The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., to the extent such ERISA claims are premised on an alleged failure to credit any member of the Settlement Class's account and/or benefits for all hours worked or all compensation paid or entitled to be paid; and (5) any and all wage-and-hour laws or wage-related claims of any kind under any other laws, regulations or ordinances.

Effective as of the date of the Final Approval Order, each Class Member who does not exclude him/herself from this settlement by the deadline to do so, regardless of whether such person submits a timely claim form, shall be deemed to fully, finally, and forever completely settle, compromise, release, and discharge Released Persons from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Defendants under state and/or local law, including but not limited to any and all claims for unpaid overtime or minimum wage pay, failure to maintain and furnish employees with proper wage records failure to furnish notices of pay rate, failure to pay spread of hours pay, failure to pay call-in pay, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under New York state and/or local wage and hour laws (including but not limited to the New York Labor Law, New York Code of Rules and Regulations, and the New York Wage Theft Prevention Act), through the date the Preliminary Motion for Settlement Approval is filed with the Court.  Said release and discharge shall bind each Class Member and his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys.  The foregoing release and discharge includes all claims for unpaid regular or overtime wages, claims under any wage and hour and wage payment law claims (including statutory claims), all derivative benefit claims (both ERISA and non-ERISA benefits, including but not limited to 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits), all claims arising under any state or local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever related to such claims, arising from each such Class Member's employment with Defendants.

The Releasing Persons further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages, penalties, or any other form of relief based on any of the Released Claims asserted or settled in the Litigation which may arise out of, or in connection with any other individual, representative, class or any administrative or arbitral remedies pursued by any individual(s), class, or any federal, state or local governmental agency against any of the Released Persons. Releasing Persons further acknowledge that they are enjoined from pursuing any Released Claim the Releasing Persons has, had, might have or might have had against any of the Released Persons based on any act or omission that occurred up to and including the date the Court enters a Final Approval Order.

**B.** Class Counsel and Named Plaintiffs, for themselves only, represent and warrant that nothing that would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**C.** The Named Plaintiffs, in addition to the claims referenced in Paragraph XII(A), agree to release all claims brought in this action, specifically defined in the Complaint and Amended Complaint, with prejudice, effective as of the date of the Final Approval Order.

**D.** Short Form Release on Settlement Checks. All settlement checks mailed to Participating Claimants shall contain on the back of each such check, the following limited endorsement:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**
I understand that I have up to 200 calendar days from the date I was mailed this Settlement Check to sign and cash this Settlement Check. By endorsing this check, I affirm I previously consented to join in the case entitled *Vivaldo vs. United Talmudical Academy of Kiryas Joel, Inc. et al.*, No. 14-cv-02636, now pending in Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claims of any kind whatsoever that I have or might have for unpaid wages or overtime pay, or any other claim for violation of federal, state, local or other applicable laws regulating hours of work, wages (including overtime wages), the timing and/or payment of wages, or recordkeeping of any kind (including, but not limited to, the FLSA, 29 U.S.C. § 201, *et seq.*, or the NYLL, §§ 160, 652), or any damages based upon, relating to, or arising out of any such claims (including, but not limited to, back pay, liquidated damages, or other relief), relating to  my employment with Defendants up to and including [insert the final Order adjudicating this matter].

Signature: _____ Dated: _____

## XIII.   TERMINATION OF THE SETTLEMENT AGREEMENT

**A.**   This Settlement Agreement may be terminated on the following grounds:

    **1.**   Class Counsel or Defendants' counsel may terminate the Settlement Agreement if the Court refuses to review and approve the Settlement Agreement, if the Court declines to enter a Preliminary Approval Order in the form submitted by the Parties, if the Court declines to enter an Order Granting Final Approval,  if a Court of Appeal reverses the entry of an Order Granting Final Approval or judgment, or if the settlement as agreed does not become final for any other reason, provided, the Parties agree to work cooperatively and in good faith, including mediating any unresolved differences before Michael A. Levy, Esq., for a period of thirty (30) days to address and resolve any concerns identified by the Court or a Court of Appeal in declining to enter the Preliminary Approval Order, Order Granting Final Approval, or judgment in the form submitted by the Parties.

    **2.**   If either Class Counsel or Defendants elects to terminate the Settlement Agreement, the terminating party will be responsible for all of the Claim's Administrator's costs.

**B.**   To terminate this Settlement Agreement, Class Counsel or counsel for Defendants shall give written notice to the opposing counsel pursuant to section XIV(A) no later than:

    **1.**   Fourteen (14) days after the Court acts in any manner pursuant to, or concerning, this Agreement; or

    **2.**   Fourteen (14) days after a Notice of Appeal is filed; or

    **3.**   Fourteen (14) days after the settlement as agreed does not become final for any other reason.

**C.**   In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Litigation is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any Court:

    **1.**   The Settlement Agreement shall be terminated and have no force or effect, and no Party shall be bound by any of its terms;

    **2.**   In the event the Settlement Agreement is terminated, Released Persons shall have no obligation to make any payments of any kind to any member of the Settlement Class, any Participating Claimant, or Class Counsel;

3. Any Preliminary Approval Order, Order Granting Final Approval, and/or judgment shall be vacated;

4. The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall remain confidential, may not be utilized in any manner in the continued litigation or trial of this matter and are without prejudice to the rights of any of the Parties;

5. Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever unless used to resolve an alleged breach of this Settlement Agreement; and

6. Defendants reserve the right to oppose class and/or collective action certification and move to decertify any FLSA collective action and/or class action should the Settlement Agreement not become final for any reason.

7. The terminating party will be responsible in full for the Claim's Administrator's costs.

## XIV.    <u>NOTICES</u>.

A.    All notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

**Counsel for the SETTLEMENT CLASS:**

Michael J. Borrelli, Esq.
Borrelli & Associates, P.L.L.C.
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
516.248.5550

**Counsel for DEFENDANTS:**

Gerald C. Waters Jr., Esq.
Jonathan D. Farrell, Esq.
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue, Mineola 11501
516.747.0300

XV.     **REPRESENTATION BY COUNSEL**

    **A.**    The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

    **B.**    It is agreed that because the members of the Settlement Class are so numerous, it is impossible or impractical to have each member of the Settlement Class execute the Settlement Agreement. The Notice Packet will advise all members of the Settlement Class of the binding nature of the release, and that the release will have the same force and effect upon members of the Settlement Classes as if the Settlement Agreement were executed by each member of the Settlement Class.

XVI.    **MUTUAL FULL COOPERATION.**

    **A.**    The Parties agree to fully cooperate with each other to accomplish the terms of the Settlement Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Settlement Agreement. In the event the Parties cannot agree upon such terms, their dispute shall be decided finally by Michael A. Levy, Esq. serving as an Arbitrator on this issue.

    **B.**    The Parties to the Settlement Agreement shall use their best efforts, including all efforts contemplated by the Settlement Agreement that may become necessary by order of the Court, or otherwise, to effectuate the Settlement Agreement and the terms set forth herein. Class Counsel shall, with the assistance and cooperation of Defendants and Defendants' counsel, take all necessary steps discussed in this Settlement Agreement to secure the Court's approval of the Settlement Agreement. The Parties agree to work cooperatively and in good faith for a period of thirty (30) days in an effort to address and resolve any concerns or disputes that may arise between the Parties in taking steps to secure the Court's approval of the Settlement Agreement.  In the event the Parties cannot resolve such issues, their dispute shall be decided finally by Michael A. Levy, Esq., serving as an Arbitrator on this issue.

XVII.   **NO ADMISSION OF LIABILITY.**  Defendants enter into this Settlement Agreement to avoid further expense and disruption to their business. The Parties acknowledge and agree that liability for the actions that are the subject matter of this Settlement Agreement is disputed by Defendants. This Settlement Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties to this Settlement Agreement. The Parties further acknowledge and agree that this Settlement Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity. Neither this Settlement Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Settlement Agreement.

**XVIII.** **MODIFICATION OF AGREEMENT.**  This Settlement Agreement may not be modified or amended except in writing, signed by the affected Parties or the respective counsel of record for the Parties and as approved by the Court.

**XIX.** **CONSTRUCTION AND INTERPRETATION**

**A.** **Entire Agreement.** This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter contained herein and shall supersede all prior and contemporaneous negotiations between the Parties. This Settlement Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof. The Named Plaintiffs and Defendants participated in the negotiation and drafting of this Settlement Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiffs nor Defendants may claim that any ambiguity in this Settlement Agreement should be construed against the other.

**B.** **No Reliance on Representations or Extrinsic Evidence.** Except as expressly provided herein, this Settlement Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Settlement Agreement, the Parties agree that this Settlement Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

**C.** **Controlling Law.** This Settlement Agreement shall be subject to governed by, construed, enforced and administered in accordance with the laws of the State of New York, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject to the continuing jurisdiction of the Southern District of New York.

**D.** **Severability.** If any provision of this Settlement Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, except the Release, the remaining portions of this Settlement Agreement will remain in full force and effect to the extent that the effect of the Settlement Agreement remains materially the same and the obligations of the Parties remain materially the same.

**E.** **Section Titles.**  Section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

## XX.    FORM AND CONTENT RESOLUTION

**A.**    The Parties agree they must reach agreement on the form and content of the Settlement Agreement and its exhibits, the Preliminary Approval Motion, or the Preliminary Approval Order.

**B.**    The Parties agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the settlement that cannot be resolved among the Parties themselves, any and all such disputes may be submitted to Michael A. Levy, Esq., for final and binding arbitration. The Parties shall equally divide all costs of Mr. Levy's time for such resolution, but the Parties shall bear their own expenses for attorneys' fees, expenses, and costs.

## XXI.    BINDING EFFECT.

This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns.

## XXII.    ENFORCEMENT OF THE SETTLEMENT AGREEMENT.

In the event of a dispute concerning the rights or obligations under the Settlement Agreement or breach of a term of the Settlement Agreement, notice must be mailed to opposing counsel as provided in Section XIV, unless the breach at issue involves an immediate threat of irreparable harm for which a Party desires to seek injunctive relief. After receipt of notice, the Parties shall meet and confer in a good faith attempt to resolve the matter for thirty (30) calendar days. In the event those efforts are unsuccessful and one or more of the Parties attempts to institute any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Settlement Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred. Likewise, Defendants shall be entitled to recover, from any Participating Claimant who is found by a court of law to have breached the release provision of the Settlement Agreement by filing a lawsuit against Defendants, reasonable attorneys' fees, expenses, and costs it incurred in connection with any enforcement actions, and any damages incurred.

## XXIII.    COUNTERPARTS.

This Settlement Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Settlement Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Settlement Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XXIV.  AUTHORITY OF COUNSEL

    **A.**   **Facsimile and Email Signatures.** Any Party may execute this Settlement Agreement by signing or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

    **B.**   **Voluntary Signature.** The Parties agree that they have signed this Settlement Agreement, or authorized their counsel to sign this Settlement Agreement on their behalf, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

    **C.**   **Warranty of Counsel.** Class Counsel warrant and represent that they are expressly authorized by the Named Plaintiffs to take all appropriate action required or permitted to be taken pursuant to this Settlement Agreement in order to effectuate its terms. Counsel for Defendants warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to this Settlement Agreement in order to effectuate its terms.

## XXV.  JURISDICTION.  The Parties hereto agree to move for the Southern District of New York to retain continuing jurisdiction to construe, interpret and enforce the provisions of this Settlement Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Settlement Agreement or the issues of law and facts asserted in the Litigation.

**XXVI.** **EFFECT OF NON-APPROVAL.**  In the event that the Settlement Agreement is not approved by the Court for any reason in the form submitted by the Parties, the Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement, if possible. In the event that this Settlement Agreement or any renegotiated settlement agreement, is not approved: (A) this Settlement Agreement and, if applicable, the renegotiated settlement agreement shall have no force or effect and no Party shall be bound by any of its terms; (B) Defendants shall retain the right to remove any newly-filed case, to contest whether the case should be maintained as a class or collective action by seeking decertification of the class or collective action, and to contest the merits of the claims being asserted in the case; and (C) nothing in this Settlement Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the litigation; and the Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation.

**IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:**

DATED: _____, 2017          **NAMED PLAINTIFFS**

By:_____
          Oscar Vivaldo

By:_____
          Guadalupe Roja Morales

DATED: _____, 2017          **DEFENDANTS**

By:_____

Its: _____

27